OPINION
Defendant-appellant, Deshaun L. Wilson, appeals from a judgment of the Franklin County Court of Common Pleas, whereby appellant was convicted of one count of attempted murder, one count of felonious assault, one count of aggravated robbery, five counts of kidnapping, and one count of having a weapon while under disability.
The evidence introduced at trial established the following factual background. Michelle Ledsome, who lived at 3008 East Sixth Avenue, testified at trial that, on May 21, 1998, around 9:00 a.m., appellant pulled up in front of her house with his automobile. Michelle then testified that "someone" came to the door of her home and said that appellant wanted to talk to her half-brother, Michael Melton, who also resided there. Melton went outside to talk to appellant and, according to Michelle, after a few moments, Melton was running through the house while appellant was chasing him with a sawed-off shotgun. Michelle saw Melton run out the back door of the house, whereupon appellant left the premises.
Michelle next testified that, by 10:00 a.m. on May 21, 1998, she was in the house with Melton, her half-sister Melissa Melton, family friend Michael Watson, and Wendell Lowe, the father of Michael and Melissa Melton. At that point, appellant came up to the front porch. He was carrying a firearm and was accompanied by another unknown individual. Appellant and the unknown individual entered the East Sixth Avenue residence through an unlocked screen door. According to Michelle, appellant ordered everyone to "lay [sic] down, and he walked through the house and made sure everybody * * * was laid down." Michelle testified that everyone in the group laid down, except Wendell Lowe. When Wendell refused to lie down, appellant hit him in the head with the firearm.
Further, according to Michelle's testimony, appellant then approached Melton and took money from his pocket. Appellant then began "stomping him in his head" three or four times. Michelle indicated that Wendell intervened and told appellant to leave his son alone. Wendell then tried to disarm appellant. While Wendell and appellant were struggling over the firearm, Michelle and Melissa Melton ran out of the house. Appellant's accomplice was standing at the door at this time and Michelle pushed him out of the way to make the escape. While outside, Michelle heard gunshots followed by Wendell screaming for help. She returned to her residence, saw that Wendell was shot, and called 911.
Wendell Lowe testified that, on the evening of May 20, 1998, he visited the East Sixth Avenue residence to give money to his daughter and son, Melissa and Michael Melton, and also spent the night. On the following morning, Wendell went to the market to buy some beer. He testified that, upon returning from the market, two men, one of whom he later identified as appellant, came in through the front door and said, "you know what time it is, lay it down, lay it down." Wendell testified that he did not lie down and that appellant hit him with the firearm because he refused to do so. Wendell also testified that appellant went over to Melton, took money from his pocket, and kicked him in the face "a few times." Wendell then grabbed for appellant's firearm; whereupon he and appellant began wrestling. Wendell stated that, during the struggle, appellant's accomplice came over and struck him in the head. Wendell testified that the accomplice then told appellant "to blow me." After this statement was made, appellant shot Wendell. According to Wendell, he was shot three times in the abdomen and one time in the leg.
Michael Melton testified that he and appellant had problems in the past. When Melton was in fourth grade, he shot out the eye of appellant's dog with a "BB gun." He also testified that, about one year before the May 1998 incidents, Melton got into a fight with appellant's younger brother because the brother was "talking trash." He further testified that, when appellant drove up to the East Sixth Avenue residence, he went to the automobile to try to end all the trouble between them. While the two were talking, appellant pulled out a sawed-off shotgun. Melton ran through the house and exited out the back door. Melton testified that, upon returning to the East Sixth Avenue residence, appellant and an unknown individual entered the house. He testified, as did the witnesses above, that the individuals in the home were ordered to lie down, and that everyone did so except Wendell. Next, Melton discussed appellant's robbing and assaulting him. According to Melton, he had $400 or $500 in cash on him, which he received from ill-gotten gains. He also testified to his father being shot.
Michael Watson testified that he was at the East Sixth Avenue residence on the morning of May 21, 1998. He saw a man, which he later identified as appellant, pull up in front of the residence. Watson observed appellant and Melton talking to each other, until appellant pulled out a shotgun and Melton started to run towards and through the house. Watson next testified that appellant left the residence, only to return with an unknown individual. He testified to appellant assaulting Melton and demanding money from him. Furthermore, Watson testified that he heard four shots, followed by Wendell asking for help.
Melissa Melton also testified concerning the May 21, 1998 incidents that occurred at the East Sixth Avenue residence. In her testimony, Melissa described how she and Michelle escaped from the house. Upon returning to the house, Melissa found her father injured.
On June 3, 1998, the Franklin County Grand Jury indicted appellant on multiple felony counts involving incidents that occurred on May 21, 1998, at the residence on 3008 East Sixth Avenue. Prior to trial, appellant and plaintiff-appellee, the state of Ohio, agreed to try the following charges: attempted murder of Wendell Lowe, in violation of R.C. 2923.02 as it relates to R.C. 2903.02; felonious assault on Wendell Lowe, in violation of R.C. 2903.11; aggravated robbery of Michael Melton, in violation of R.C. 2911.01; robbery of Michael Melton, in violation of R.C. 2911.02; kidnapping of Wendell Lowe, Michael Melton, Michael Watson, Michelle Ledsome, and Melissa Melton, in violation of R.C. 2905.01; and having a weapon under disability, in violation of R.C.2923.13. All of the above charges, except the weapon under disability charge, had firearm specifications.
Appellant opted for a bench trial on a weapon under disability charge and, thus, waived his right to a jury trial on the charge. The other charges were tried before the jury. As noted above, the jury found appellant guilty of attempted murder, felonious assault, aggravated robbery, and the kidnapping of Wendell Lowe, Michael Melton, Michael Watson, Michelle Ledsome, and Melissa Melton. As to the kidnapping convictions, the jury determined that only Michael Watson was released in a safe place unharmed, which reduces that charge from a felony of the first degree to a felony of the second degree.
For purposes of the bench trial on the weapon under disability charge, appellee introduced a judgment of conviction indicating that, on September 18, 1997, appellant was found guilty of possession of cocaine. The parties stipulated that appellant is the same person who was convicted under that earlier judgment entry. The trial court found appellant guilty of having a weapon under disability.
At the sentencing hearing, the trial court found that the counts of attempted murder, felonious assault and kidnapping involving Wendell Lowe merged for purposes of sentencing. In addition, the trial court determined that the counts of aggravated robbery and kidnapping involving Michael Melton merged. Appellee dismissed the robbery charge. The trial court imposed a prison term of ten years for the attempted murder offense, nine years for the kidnapping of Michelle Ledsome, nine years for the kidnapping of Melissa Melton, seven years for the kidnapping of Michael Watson, five years for the aggravated robbery of Michael Melton, and eleven months for the weapon under disability offense. The trial court imposed a single prison term of three years on the firearm specifications. The trial court ordered that the imposed prison terms be served consecutively to each other, for a total of forty-three years and eleven months.
Appellant appeals, raising four assignments of error:
FIRST ASSIGNMENT OF ERROR:
 There was insufficient evidence to establish that Appellant purposely attempted to take the life of Wendell Lowe.
 SECOND ASSIGNMENT OF ERROR:
 The jury erred in failing to find that kidnapping victims Michelle Ledsome and Melissa Melton were released in a safe place unharmed.
 THIRD ASSIGNMENT OF ERROR:
 There [sic] jury erred in finding Appellant guilty of kidnapping Michelle Ledsome, Melissa Melton and Michael Watson.
 FOURTH ASSIGNMENT OF ERROR:
 The trial court erred in imposing consecutive terms of incarceration for the offenses of carrying a concealed weapon and having a weapon under disability.
In his first assignment of error, appellant claims that there is insufficient evidence to support his attempted murder conviction because the record does not establish that he purposely attempted to take the life of Wendell Lowe. In making this assertion, appellant reasons that Melton was the sole target of the May 1998 incidents, and that appellant and his accomplice gave little to no attention to the others in the home unless they interfered with their business with Melton. We disagree with appellant's contentions.
Sufficiency of evidence is the legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. When reviewing whether a verdict is supported by a sufficiency of the evidence, an appellate court examines the evidence in the light most favorable to the prosecution and concludes whether any rational trier of fact could have found essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273.
To be found guilty of attempted murder, the record must establish beyond a reasonable doubt that appellant attempted to purposely cause the death of Wendell Lowe. R.C. 2923.02(A); R.C. 2903.02(A). A person acts purposely when it is his or her specific intention to cause a certain result. R.C. 2901.22(A). Intent is often proven by the surrounding facts and circumstances of a case. In re Washington (1998), 81 Ohio St.3d 337,340.
Here, the evidence demonstrates that appellant fired four shots at Wendell. Three of the shots struck his abdomen, which is an area of the body containing vital organs. A jury may infer that appellant had a purpose to kill Wendell given the number of shots fired at him and the location where the bullets entered his body. If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life or inflict great bodily harm, the purpose to cause the death may be inferred from the use of the weapon. State v. Stallings (2000),89 Ohio St.3d 280, 291; State v. Campbell (1994), 69 Ohio St.3d 38, 49. The number of shots fired, places where the bullets entered the body and resulting wounds are all probative evidence of a purpose to cause death.State v. Strodes (1976), 48 Ohio St.2d 113, 116, death penalty vacated (1978), 438 U.S. 911.
It is important to note that the shooting occurred immediately after appellant's accomplice told appellant to "blow" Wendell. A jury could conclude that this comment was a signal to kill Wendell and, thus, infer appellant's purpose to kill him when he responded to the comment by shooting him several times with a deadly firearm.
Furthermore, appellant's hitting Wendell with the firearm after he refused to lie down when so ordered establishes appellant's willingness to harm anyone in the home who opposed him. This action also demonstrates that the targets of appellant's criminal activity expanded beyond Melton.
Accordingly, examining the evidence most favorably to appellee, we conclude that there is sufficient evidence to support appellant's conviction for attempted murder. As such, we overrule appellant's first assignment of error.
We next address appellant's third assignment of error, wherein appellant asserts that there is insufficient evidence to support his convictions of kidnapping Michelle Ledsome, Melissa Melton and Michael Watson. We disagree.
R.C. 2905.01(A) sets forth the elements of kidnapping and provides, in pertinent part, that no person "by force, threat, or deception" shall restrain the liberty of another person to facilitate the commission of any felony or to terrorize or to inflict serious physical harm "on the victim or another." Ohio law recognizes that a threat of force can be implied under the circumstances of the case. See, e.g., State v. Schaim
(1992), 65 Ohio St.3d 51, paragraph one of the syllabus (holding that "threat of force can be inferred from the circumstances" in rape cases);State v. Davis (1983), 6 Ohio St.3d 91, paragraph one of the syllabus (recognizing that the threat of force element of robbery is satisfied by examining the circumstances of the particular case). To "restrain" another means "`to limit one's freedom of movement in any fashion for any period of time.'" State v. Walker (Sept. 2, 1998), Medina App. No. 2750-M, unreported, quoting State v. Wingfield (Mar. 7, 1996), Cuyahoga App. No. 69229, unreported.
An offense under R.C. 2905.01 does not depend on the manner in which an individual is restrained. 1974 Committee Comment to R.C. 2905.01. Rather, it depends on whether the restraint "is such as to place the victim in the offender's power and beyond immediate help, even though temporarily." Id. The restraint "need not be actual confinement, but may be merely compelling to the victim to stay where he is." Id.
In this case, when appellant entered the East Sixth Avenue residence and ordered everyone to lie down, Michelle Ledsome, Melissa Melton and Michael Watson were restrained of their liberties. The restraint came about by threat of force, which was exerted by appellant wielding a firearm and making the order to lie down. As well, appellant demonstrated that he would use any necessary force to restrain the individuals in the home when he hit Wendell with the firearm after he refused to lie down as ordered. Accordingly, we conclude that there is sufficient evidence to support appellant's convictions of kidnapping.
Appellant may properly be convicted of kidnapping even though the individuals were bystanders to Melton being robbed and Wendell being shot. The record demonstrates that appellant restrained the individuals of their liberties by threat of force so that he could facilitate the robbery against Melton. As noted above, a person who restrains the liberty of another person by threat of force to facilitate the commission of any felony is guilty of kidnapping. R.C. 2905.01. See, also, Statev. Menendez (June 5, 1986), Franklin App. No. 85AP-1056, unreported (holding that a defendant could be properly convicted of and sentenced for separate violations of kidnapping where the kidnapping victims were restrained of their liberties by the defendant who was simultaneously robbing another individual).
In addition, appellant may properly be convicted of kidnapping Michelle Ledsome and Melissa Melton, even though the kidnapping victims eventually escaped. Prior to escaping, the two victims were restrained of their liberty by threat of force. It is irrelevant that the restraint was brief in comparison to the restraint of Michael Watson, who remained in place as ordered by appellant and his accomplice. As noted above, the "restraint" element of kidnapping is satisfied when an individual's freedom of movement has been limited for any period of time. Walker.
Based on the above, we overrule appellant's third assignment of error.
Upholding appellant's kidnapping convictions, we next address his second assignment of error, which concerns whether appellant's kidnapping Michelle Ledsome and Melissa Melton are first-degree felony offenses. As noted above, kidnapping is generally a first-degree felony, but it can be reduced to a second-degree felony if the defendant proves by a preponderance of the evidence that he or she released the victim in a safe place, unharmed. State v. Ellis (June 20, 1996), Franklin App. No. 95APA10-1399, unreported; State v. Cornute (1979), 64 Ohio App.2d C199, 201. According to appellant, the record establishes that Michelle Ledsome and Melissa Melton were "released in a safe place unharmed" because the two females left the house unharmed and no effort was made to keep them from leaving. Thus, appellant asserts the jury erred in failing to recognize the mitigating circumstances surrounding the kidnapping convictions regarding Michelle Ledsome and Melissa Melton. We disagree.
Although neither appellant nor his accomplice made any effort to keep Michelle Ledsome and Melissa Melton from leaving the East Sixth Avenue residence, the victims left the home as a result of their efforts to escape. Michelle and Melissa escaped after appellant was otherwise distracted and engaged in a struggle with Wendell, who was trying to disarm appellant. In making their escape, the victims ran past appellant's accomplice, whose inaction may reasonably be inferred to reflect that he was also distracted and focused on Wendell's attempt to disarm appellant. We conclude that a victim has not been "released" by a captor when the victim takes advantage of an opportunity to escape. SeeState v. Bettem (Jan. 15, 1999), Belmont App. No. 96-BA-39, unreported (concluding that a defendant failed to establish that he released his kidnapping victims because the evidence demonstrates that the victims managed to escape through a window "by their own efforts"); State v.Richardson (Feb. 24, 1982), Columbiana App. No. 81-C-33, unreported (noting that evidence produced at trial indicated that kidnapping victims were not released because their freedom was the result of their acts and not of any act or intent of the defendant). Thus, the record does not establish that appellant "released" Melissa and Michelle.
Additionally, nothing in the record establishes the "safe place" prong, which is also required to reduce the kidnapping charge to a second-degree felony offense. Although Wendell's actions gave Melissa and Michelle an opportunity to escape, neither appellant nor his accomplice had given them permission to leave and a threat of harm continued to be present when they fled from the house because appellant and his accomplice were still carrying out their criminal scheme.
Accordingly, we conclude that the jury did not err in failing to find that Michelle and Melissa were "released in a safe place unharmed." As such, we overrule appellant's second assignment of error.
Appellant's fourth assignment of error concerns the trial court's decision to impose consecutive sentences in this case. Although appellant phrases his fourth assignment of error as claiming that the trial court erred in imposing consecutive sentences of imprisonment on the offenses of carrying a concealed weapon and having a weapon under disability, a reading of his arguments under the assignment of error indicates that appellant is actually claiming that the trial court erred in imposing consecutive sentences on the convictions of kidnapping Michael Watson, Michelle Ledsome and Melissa Melton. Specifically, appellant claims that the trial court's decision to impose consecutive sentences of imprisonment on these kidnapping convictions is inappropriate and disproportionate to the seriousness of appellant's conduct, because the kidnapping victims suffered no physical harm. We disagree.
As noted above, the trial court imposed a sentence of imprisonment for seven years as to the kidnapping of Michael Watson, nine years as to the kidnapping of Michelle Ledsome, and nine years as to the kidnapping of Melissa Melton. The trial court ordered appellant to serve these sentences consecutively with the offenses of attempted murder, aggravated robbery, and having a weapon while under disability.
According to R.C. 2953.08(G)(1)(a), the trial court's sentence is invalid if, by clear and convincing evidence, the sentence is not supported by the record. Clear and convincing evidence is evidence that will provide in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cincinnati Bar Assn. v.Massengale (1991), 58 Ohio St.3d 121, 122.
R.C. 2929.14(E)(4) governs when trial courts may impose consecutive sentences of imprisonment on an offender and states:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
In this case, appellant terrorized the individuals in the East Sixth Avenue home by forcing them to lie down on the floor and by brandishing a firearm. The individuals suffered through witnessing appellant assaulting and robbing Melton, hitting Wendell with the firearm, and eventually shooting Wendell numerous times. Such egregious conduct calls for lengthy imprisonment stemming from consecutive sentences, because such sentences protect the public and adequately punishes the offender. Consecutive sentences protect the public by striving to deter the criminal conduct demonstrated by appellant. Anyone desiring to mirror appellant's criminal act does so with the understanding that it will result in a severe punishment. Additionally, the lengthy imprisonment stemming from consecutive sentences is necessary to punish appellant. Each individual in the East Sixth Avenue home endured appellant's terrorizing acts and was subjected to his threats of force. Ordering appellant to serve consecutive sentences in this case holds him accountable for the crimes he committed on each of his victims.
We also reject appellant's assertion that consecutive sentences are disproportionate to the kidnapping crimes committed against Michelle Ledsome, Michael Watson, and Melissa Melton. Although appellant did not physically harm these kidnapping victims, they were restrained of their liberty and forced to witness their friends and family being shot, robbed and assaulted. Concurrent sentencing on these kidnapping offenses would amount to a multiple offense "discount" that would not reflect the seriousness of appellant's criminal conduct. Similarly, because of the serious nature of appellant's criminal conduct, we conclude that the consecutive sentences are not disproportionate to the aggravated robbery, attempted murder and having a weapon while under disability offenses.
The record also establishes that consecutive sentences are not disproportionate to the danger appellant poses to the public. Appellant's conduct in this case demonstrates his disregard for the law and the safety of others. In considering appellant's conduct in this case with his prior drug abuse offense, we conclude that the record has established a great likelihood of recidivism by appellant. Such danger posed by appellant necessitates a lengthy sentence stemming from consecutive sentences.
Finally, the record demonstrates that the harm caused by the multiple offenses in this case was so great that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct. As noted above, all the individuals in the home were victims of appellant's criminal conduct, which included kidnapping, robbery and attempted murder. The nature of these offenses demand consecutive sentences.
As such, we conclude that the record satisfies elements in R.C.2929.14(E)(4) allowing the trial court to impose consecutive sentences on appellant. We will not address whether the trial court made the statutorily required findings and explanations upon imposing the consecutive sentences because appellant has not requested us to do so. We are not required to address errors neither assigned nor argued.Toledo Great Eastern Shoppers City, Inc. v. Abde's Black Angus SteakHouse No. III, Inc. (1986), 24 Ohio St.3d 198, 203; Franklin Cty. Dist.Bd. of Health v. Sturgill (Dec. 14, 1999), Franklin App. No. 99AP-362, unreported. Therefore, based on the above, we overrule appellant's fourth assignment of error.
In summary, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
 _____________________ KENNEDY, J.
TYACK and PETREE, JJ., concur.