OPINION
Appellant, Bryan McCord, appeals the judgment of the Clermont County Common Pleas Court, Juvenile Division, finding him delinquent for committing acts that constituted the crime of rape. We affirm the trial court's adjudication.
In June 1999, nineteen-year-old D.G. lived with her sister, A.G., in Tanglewood Apartments. James Crafton, a friend of both girls, lived across the hall from their apartment. Around midnight on June 1, 1999, D.G. arrived at Crafton's apartment after Crafton got off work. Several people had gathered there. The gathering included appellant, whom D.G. had met around the apartment complex several times, and several other people.
D.G. spoke briefly to appellant, then drove to Burger King to buy food. D.G. returned to Crafton's apartment and sat at a table while she ate. After eating, D.G. lay down on a couch by herself, listening to music and talking. Although she spoke to appellant, the two did not have much conversation. When D.G. fell asleep on the couch, everyone was still in the apartment.
Later, D.G. awoke to a knock on the door. The apartment was dark, and no one else was in sight. D.G. opened the door. Appellant walked into the apartment uninvited, and D.G. returned to lay down on the couch. Sitting on the floor in front of the couch, appellant told D.G. that he drank a lot at his place that evening. D.G. began to fall back to sleep. Appellant, who smelled of alcohol, asked D.G. to give him a hug before he left. Appellant leaned to hug D.G., who remained on the couch, but he did not leave.
Instead, appellant kneeled by the couch and began kissing D.G. on the mouth as she lay there. D.G. attempted to push appellant away several times. He stopped kissing her for a moment, but then resumed. D.G. continued to attempt to push appellant away. Appellant, however, began rubbing D.G.'s stomach. D.G. told appellant to stop and attempted to move his hands, but appellant continued to touch her, moving his hand to D.G.'s breast. Appellant, who had gotten onto the couch, then moved his hand to D.G.'s leg.
Despite D.G.'s attempts to push appellant's hand away, he continued to touch her, moving his hand between her legs and unbuttoning D.G.'s jean shorts over her protests. Appellant ripped D.G.'s shorts as he attempted to remove them and she attempted to pull them back up. Appellant removed both D.G.'s shorts and underwear over her protests and her attempts to replace her clothing. Appellant then unbuttoned his own pants while he lay on top of D.G. Although D.G. attempted once again to push appellant away, appellant penetrated D.G.'s vagina with his penis. During intercourse, D.G. repeatedly told appellant to stop and attempted to push him off of her. After appellant ejaculated, he got up from the couch, said, "I'm sorry," and left the apartment.
D.G., crying hysterically, returned to her own apartment and told A.G. that appellant had raped her. A.G. called police. On June 2, 1999, the prosecutor filed a complaint in the juvenile division alleging that appellant had committed acts that constituted the crime of rape pursuant to R.C. 2907.02(A)(2).
The trial court held a delinquency hearing on August 25, 1999. Appellant claimed at trial that D.G. had consented to have sex with him. After hearing evidence including the testimony of D.G., A.G., and appellant, the trial court adjudicated appellant a delinquent child and accordingly entered judgment for rape. The trial court ordered appellant to be committed to a juvenile facility for a minimum of twenty-four months. Appellant now presents two assignments of error for our review.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN ADJUDICATING ON A RAPE COMPLAINT WHEN THE PROSECUTION FAILED TO PRESENT EVIDENCE THAT THE ALLEGED DELINQUENT CHILD USED FORCE AND WHEN THE EVIDENCE SUPPORTED CONSENTUAL [sic] INTERCOURSE.
Appellant claims that the state introduced insufficient evidence showing the element of force, beyond that inherent in the crime of rape, to support his adjudication. The state responds that D.G.'s testimony that she repeatedly told appellant to stop and attempted to resist appellant's advances meets the force requirement in the rape statute.
Although this case involves a juvenile adjudication, the standard of review for the sufficiency of the evidence is the same standard used in an adult criminal case. See In re Washington (1998), 81 Ohio St.3d 337,339. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court's function is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
The juvenile court found that appellant committed the crime of rape pursuant to R.C. 2907.02(A)(2). That statute states that no person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. R.C. 2901.01
defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person." A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person or creates the belief that physical force will be used if the victim does not submit.State v. Schaim (1992), 65 Ohio St.3d 51, 55. The force and violence necessary to commit the crime of rape depends on the age, size, and strength of the parties and their relation to each other. State v.Eskridge (1988), 38 Ohio St.3d 56, 58.
The facts show that appellant used physical force to compel D.G. to submit to sexual intercourse. Just before the rape, appellant touched D.G.'s breast and vagina despite her repeated protestations and her attempts to push him away. D.G. stated at one point that she could not move her legs because appellant had placed one of his legs atop both of hers. Appellant forcibly undressed D.G., ripping her shorts, in the face of her attempts to keep her clothing on. Appellant then laid on top of D.G. while he had intercourse with her, during which time D.G. continued to tell him to stop and continued to attempt to push him away. D.G.'s testimony shows that, throughout the incident, appellant used actual physical force to restrain D.G. and to overcome her attempts to resist. We can only find that appellant's actions constituted the element of physical force necessary to find that he committed rape.
Appellant also claims that inconsistencies in D.G.'s testimony and other evidence showed that he did not use force or duress to rape her. However, we find this claim more pertinent to appellant's second assignment of error and will address it there. Since we have found as a matter of law that the state introduced sufficient evidence that appellant used force, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE DECISION OF THE COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In claiming that his adjudication is against the manifest weight of the evidence, appellant argues that D.G.'s inconsistent and untruthful statements render her testimony unbelievable. The state counters that a reasonable person could believe D.G.'s version of the incident so that the weight of the evidence supports his adjudication.
In determining whether a criminal conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
Appellant alleges that logistical inconsistencies in D.G.'s testimony and factual inconsistencies between D.G.'s testimony and that of her sister, A.G., mandate reversal. The evidence to which appellant points in support of his claims that the intercourse was consensual implicates his own testimony. The trial court's determination rested largely on an assessment of both D.G.'s and appellant's credibility. When engaging in a manifest weight analysis, the reviewing court must keep in mind that the trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. Gibbs
(1999), 134 Ohio App.3d 247, 256.
Appellant presented his version of the incident, in which he claimed consensual sex, at the hearing. We have reviewed both D.G.'s testimony and appellant's testimony. We find D.G.'s version of the events, including her assertions about appellant's use of force, both logically possible and believable. Any inconsistencies between D.G.'s testimony and that of her sister regarding the amount of contact between appellant and D.G. before the incident may be explained by differences in perception. Yet, the testimony of appellant, in which he revealed that he had an alcohol "buzz" during the incident, is less believable. He even stated at one point that D.G. told him that they could not have sex, but he continued on to have sex with her because it "seemed like" she wanted to have sex and he never heard her tell him, "No."
The trial court here simply chose to believe D.G.'s testimony over that of appellant. After a full review of the record, we cannot find this credibility determination unwarranted. The fact-finder reasonably determined that the manifest weight of the evidence pointed towards appellant's guilt. Appellant's second assignment of error is overruled.
 _________________________ VALEN, J.
YOUNG, P.J., and WALSH, J., concur.