OPINION
{¶ 1} Jerry L. Doyle, defendant-appellant, was charged with obstructing official business and disturbing a lawful meeting to which charges he entered a plea of not guilty. After trial before a jury, he was found guilty on both charges. The trial court sentenced him to 90 days in jail for obstructing official business and found that the penalty for disturbing a lawful meeting merged because it came out of the same or similar conduct.
 {¶ 2} Appellant appeals, asserting the following assignments of error:
[I.] The state did not present sufficient evidence to convict appellant of obstructing official business.
[II.] There was an abuse of discretion where the trial court excluded relevant evidence from the trial.
[III.] The trial court erred and abused its discretion when it prohibited the jury's request to consider equal protection considerations in their deliberation.
[IV.] The court erred and abused its discretion by not recusing itself during sentencing after appellant implied that the court had colluded with his attorneys in the past in a similar case.
 {¶ 3} The Columbus Board of Education meets 24 times a year, approximately two times per month. The procedure on the first meeting of each month is first to approve a consent agenda which consists of those matters necessary to keep the Columbus school system operating. Those include approval of teacher hirings, purchases and so forth. The board next considers reports from the president and members of the board who chair committees. The last item of business is generally to consider golden rule awards and presentations. During the agenda items, according to a rule adopted by the board of education on August 19, 2002, public participation is allowed on action items, which are items to be voted on that night. The new rule of August 19, 2002, changed the initial public participation from "agenda" items to "action" items. Finally, the board concludes with public participation on non-agenda items, which may include virtually any item of interest to the board. In both instances, public presentations are limited to three minutes each. Members of the public who wish to speak are required to sign a sheet, both for action items and non-agenda items.
 {¶ 4} The second board meeting of each month consists of agenda items only, with no public participation other than on action items.
 {¶ 5} On September 2, 2002, the board of education met on its first monthly meeting of September with Stephanie Hightower, president, presiding. At that time, appellant appeared, as was his usual custom, and signed a sheet indicating that he intended to speak both on agenda items and non-agenda items. Prior to the meeting, he was informed by a member of the Columbus school staff that, even though he had previously signed up to speak on the bond issue, the new rule in effect for the first time on September 2, 2002, would not allow him to speak on that item as an action item since there was to be no vote on it, but that he could speak about it during the non-agenda period. Appellant was quite angry at the new rule and felt it did not apply to him since he was told of the new rule change only at the September 2nd meeting. At the time he initially signed a speaking sheet, where he had indicated the bond issue on the agenda sheet, he had not been informed of the change. He felt that he was "grandfathered" in. He deeply resented the rule change and the voiding of his earlier sign-up sheet.
 {¶ 6} Appellant then signed up to speak on two action items. Prior to the time for any public participation to take place, appellant took the podium and demanded that the board verify and justify the new rule, which prohibited him from speaking on the bond issue, until time for non-agenda participation. School Board President Hightower instructed appellant that he would have an opportunity to speak at the appropriate time and asked him to take his seat. Appellant ignored this request and continued to speak to the board. Ms. Hightower told appellant that he could speak on any subject of his choosing at the end of the agenda and he answered by stating that he would not let them have their meeting. After repeatedly requesting that appellant wait until the appropriate time to speak, the board conducted an abbreviated version of their meeting, completing only the minimum required agenda and then adjourning. During the time that the board was conducting their abbreviated meeting, which primarily consisted of dealing only with the consent agenda and two or three committee reports for which a vote was necessary, appellant remained at the podium stating that nobody else could have access to the podium. He turned to the camera recording the meeting for public consumption and loudly talked into the camera, virtually drowning out the limited meeting that the board conducted. President Hightower adjourned the meeting without completing the planned agenda.
 {¶ 7} Both Board President Hightower and Board Member Jeff Cabot testified that the board was unable to complete the agenda that was planned because of appellant's interruption of the meeting.
 {¶ 8} The omitted items included recognition of athletic directors who had attended with friends and family because Ms. Hightower felt that it was unfair for their recognition to take place in such a confusing situation. The board was also unable to give other members of the public who had signed up to speak on non-agenda items an opportunity to participate.
 {¶ 9} Approximately 12 days later, appellant was charged with two criminal offenses under the Columbus City Code: one count of obstructing official business, a misdemeanor of the second degree, section 2321.31; and one count of disturbing a lawful meeting, a misdemeanor of the fourth degree, section 2317.12. Following a jury trial, where appellant represented himself pro se against the advice of the trial court judge who provided appellant with counsel for "advice only," appellant was found guilty of both charges.
 {¶ 10} Appellant's first assignment of error is that his conviction for disturbing a lawful meeting and obstructing official business is against the manifest weight of the evidence.
 {¶ 11} The standard of review for sufficiency of evidence has been set forth by the Supreme Court of Ohio in State v. Jenks
(1991), 61 Ohio St.3d 259, 273. The Supreme Court stated: "[Th]e relevant inquiry does not involve how the appellate court might interpret the evidence. Rather, the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." TheJenks court further noted that a trial court verdict should not be disturbed unless "the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts."
 {¶ 12} Appellant was convicted of violating section 2321.31 of the Columbus City Code, Obstructing Official Business, which provides, as follows: "(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties." Appellant was also convicted of violating section 2317.12, Disturbing a Lawful Meeting.
 {¶ 13} In order for the prosecution to prove a defendant guilty of these charges, it must prove the elements beyond a reasonable doubt. There is no doubt that the Columbus Board of Education was conducting a lawful meeting and that official business was intended to be conducted. Board President Hightower and Board Member Cabot testified that appellant disturbed the meeting and obstructed official business. City's Exhibit A, the videotape of the meeting, graphically substantiates their testimony. As shown on the videotape, appellant stated that he would not allow the meeting to continue and that he would not yield the podium. Appellant continued to talk loudly in the microphone at the podium with his back to the school board during the entire time that the abbreviated meeting was conducted. Both Hightower and Cabot testified that they were obstructed in conducting their business. As noted from the videotape, the athletic directors who were to be honored were deferred to a later date; the public participation on non-action items did not take place because appellant stated that he would not yield the podium.
 {¶ 14} The record shows that appellant did not have a privilege to hamper or impede the school board from performing its lawful duties. Carol Harper, a board employee, informed him prior to the meeting, and prior to his obstruction, of the new rule. The fact that appellant thought he was grandfathered into proceeding as under the old rule did not give him a privilege to do so since the board was properly operating under a validly promulgated new rule. Appellant's main theme in his defense was that he had no intention to prevent, obstruct or delay the performance of the public duties. He blamed the school board president for shortening the meeting and obstructing the business. That contention is contrary to what can be visually and audibly observed from the videotape. Appellant also asserted that his purpose was to have a valid explanation for the new rule, not to obstruct the meeting.
 {¶ 15} It is true that, for the city to prove a defendant guilty of the charges brought against appellant, it must prove beyond a reasonable doubt that the defendant acted "with purpose." Columbus City Code section 2301.22(A) provides a definition of the mental state "purposely" as follows: "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 16} The Supreme Court of Ohio has provided an evidentiary standard by which intent may be proven: "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." In re Washington
(1998), 81 Ohio St.3d 337, 340.
 {¶ 17} Jurors in this case were given an opportunity to look into the mind of appellant in a way not often provided in criminal trials, as they were able to watch a videotape of the entire meeting and could see for themselves what appellant did and what he said at the time in question. They were able to observe his mannerisms and demeanor while he was committing the acts for which he was charged. In addition to the video evidence shown during the trial, testimony evidence was provided to support a finding that appellant acted with purpose to prevent, obstruct or delay the board while they attempted to conduct their meeting. In fact, appellant stated, as recorded: "[N]o they won't let me speak on what I wanted to when I wanted to and so then I'm not going to let you have your meeting."
 {¶ 18} Clearly, there was sufficient evidence so that reasonable minds could find that the city had established each element beyond a reasonable doubt.
 {¶ 19} Needless to say, this court does not find that the conviction was against the manifest weight of the evidence as the evidence overwhelmingly established a purpose to impede or obstruct lawful business unless the board agreed to appellant's agenda rather than the agenda of the school board. Even acting as a "13th juror member," and within limits weighing the evidence, we find no reason to differ with the jury's findings.
 {¶ 20} Appellant's first assignment of error is overruled.
 {¶ 21} Appellant secondly contends that the trial court abused its discretion by excluding relevant evidence from the trial. The evidence to which appellant is referring are issues of his private newsletter "On the Columbus Plantation." Appellant contends these newsletters are relevant in establishing a pattern of appellant's first amendment criticisms of publicly elected officials, particularly school board members. The trial court did allow one of these newsletters to be admitted, which newsletter discussed a federal district court's setting aside of a previous conviction of appellant for violating a Columbus school board rule that prohibited public speakers from discussing school board members by name. While the trial court felt that the relevance of this newsletter was questionable, the court allowed it to be admitted into evidence since appellant, acting pro se, had discussed it in his opening statement without objection by the city. However, the trial court found that the other editions of "On the Columbus Plantation" were not relevant as to the violations in this case. While arguably the evidence might have been of minor assistance in establishing bias or prejudice on behalf of Hightower or Cabot to attempt to impeach their testimony, it was not prejudicial in this case, as the videotape which was not contested fully substantiates their testimony. Furthermore, the jury was well aware, from appellant's opening statement and testimony, that appellant spoke at virtually every board meeting, usually twice, and that he was extremely critical of school board members. Hence, the fact that school board members might have had reason to feel hostile toward appellant was no secret.
 {¶ 22} The articles from "On the Columbus Plantation" had no relevance to the substance of the charges made against appellant.
 {¶ 23} Appellant's second assignment of error is overruled.
 {¶ 24} Appellant's third assignment of error is that the trial court abused its discretion when it denied the jury's request to consider equal protection considerations in their deliberations.
 {¶ 25} Appellant, during the course of his defense, placed great emphasis on the fact that, on two or three other occasions, a public speaker had obstructed the school board's meeting causing the meeting to be adjourned prematurely without being charged with a crime as appellant had been charged. In fact, appellant was even allowed, without objection, to play videotapes showing obstruction of these meetings. The prosecutor asserted that these videotapes had no relevance as the court was concerned with what appellant had done, rather than what happened to other persons under different circumstances.
 {¶ 26} The trial court was not requested to make an equal protection ruling nor was there any instruction of this sort tendered to the jury. After the conclusion of the court's instructions, appellant agreed that they were proper and made no objection thereto.
 {¶ 27} During jury deliberations, the jury presented the following question to the court: "[C]an we consider the board rule, which Mr. Doyle was charged with violating, being applied to all who have violated the same rule?" The court said: "[N]o."
 {¶ 28} The court, during discussion with appellant and the prosecutor, stated out of presence of the jury the following:
The Court feels, based upon the question that was asked here, that whether or not this particular rule was violated and whether or not this rule was applied evenly across the board to other individuals who may have violated that same rule, it really has no bearing on this case at all and that's for a separate hearing, a separate time. It has no business in this trial, and my answer is no.
 {¶ 29} The trial court did not abuse its discretion in instructing the jury that they could not consider what had happened to other individuals who may have violated a school board rule. The trial court's instruction to the jury, to which appellant made no objection, properly excluded any reference to equal protection as it is a matter of law to be decided by the court and not a matter of fact to be decided by a jury. Absent constitutional limitations, which we do not find raised in this case, the trial court could consider as irrelevant how a couple other people were treated as far as a criminal charge being filed after a disruption of prior board of education meetings. Obviously, the interference and obstruction of the board's business may vary and be based on different situations as the other two claimed violations were. It is not up to the jury to compare and to decide that all violations should be handled equally as far as criminal charges are concerned.
 {¶ 30} Appellant's third assignment of error is overruled.
 {¶ 31} In appellant's fourth and final assignment of error, he contends that the trial court abused its discretion by not recusing itself during sentencing.
 {¶ 32} R.C. 2701.031 (formerly R.C. 2937.20) provides the procedure for a party to a proceeding to file an affidavit of disqualification if he feels that a presiding judge has a bias or prejudice for or against a party. No such affidavit was filed by appellant in this case and there is no oral or written motion for recusal in the record. The record does not indicate that the trial judge felt any bias or prejudice against appellant during the course of the trial. In fact, the trial court appointed an attorney to advise pro se appellant of legal matters, without any indication that appellant was not representing himself made to the jury. The trial court also was quite lenient in allowing videotapes to be introduced and statements to be made that were of little or no relevance to this case. The trial court politely addressed appellant in every respect during the course of the trial.
 {¶ 33} During the sentencing, the trial court found that the two charges merged so that only one penalty would be imposed. He further used language directly from R.C. 2929.22 for explaining his reasons for imposing the sentence given to appellant, pointing to his prior record, the nature and circumstances of the offense, and that appellant's conduct was characterized by a "pattern of repetitive compulsive and aggressive behavior with heedless indifference to consequences." The trial court acknowledged that he would take appellant's medical problems into account as mitigation. It seems that the trial court in this case gave much consideration to the listed statutory factors, as well as other factors, prior to imposing this sentence.
 {¶ 34} The court had no duty to disqualify himself from the case.
 {¶ 35} Appellant's fourth assignment of error is overruled.
 {¶ 36} Appellant's four assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.
Judgment affirmed.
Bowman and Klatt, JJ., concur.
McCormac, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.