JOURNAL ENTRY AND OPINION
Antonio Henderson appeals from a judgment of the juvenile court which adjudicated him to be a delinquent child by way of complicity to commit felonious assault. On appeal, he assigns the following as error for our review:
 I. THE TRIAL COURT VIOLATED ANTONIO HENDERSON'S RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION TEN, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION, AND JUV.R. 29(E)(4) WHEN IT ADJUDICATED HIM DELINQUENT OF COMPLICITY TO COMMIT FELONIOUS ASSAULT ON THE BASIS OF UNDULY SUGGESTIVE AND UNRELIABLE EYEWITNESS IDENTIFICATION.
 II. THE TRIAL COURT VIOLATED ANTONIO HENDERSON'S RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE ONE, SECTION TEN, AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION, AND JUV.R. 29(E)(4) WHEN IT ADJUDICATED HIM DELINQUENT OF COMPLICITY TO COMMIT FELONIOUS ASSAULT ABSENT PROOF OF EVERY ELEMENT OF THE CHARGE AGAINST HIM BY SUFFICIENT, COMPETENT, AND CREDIBLE EVIDENCE.
 III. THE TRIAL COURT VIOLATED ANTONIO HENDERSON'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION SIXTEEN OF THE OHIO CONSTITUTION WHEN IT ADJUDICATED HIM DELINQUENT OF COMPLICITY TO COMMIT FELONIOUS ASSAULT, WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Having reviewed the record and the legal arguments of the parties, we affirm the judgment of the trial court.
On February 21, 2001, Willy J. Wimberly, the sixteen year-old victim in this case, was leaving a friend's home on East 177th Street in Cleveland, Ohio and heading towards his home on East 173th Street when a red truck carrying two occupants passed him. The passenger "looked over at him", and the driver parked at the end of East 173th, a dead-end street. Wimberly would later describe the passenger as a "light skinned" black male. At this time, Wimberly believed the two individuals in the truck were going to rob him. As he approached his home, Wimberly noticed the two individuals from the truck now approaching him on foot when he was a few houses down the street from his. The two males were walking side by side. He then saw the "light skinned" black male pull out a black gun and, while observing this, Wimberly began to run towards his house. The shooter stated "don't try to run." Wimberly testified he jumped through his yard, onto the porch and yelled for his mother. He further stated after his mother opened the door he saw the two males running back towards the truck together and the "light skinned" male turn around and fire the gun. Wimberly stated he was on his porch when the gun was fired and at that time, Henderson was "just running."
On cross-examination, Wimberly testified he saw Henderson walking down the street with the shooter on the night of the incident and running with the shooter after the gun was fired. The record revealed Henderson went back to the truck and was later found inside by police.
Henderson testified on the night of the incident, he was playing pool at the Ambassador Bowling Alley in Bedford, Ohio and had consumed alcohol. He rode home with an acquaintance, Michael Mathis in Mathis' car, his cousin Anthony Brown, and his uncle Jamar Jackson. He further stated he got tired and fell asleep; he awoke to the police around the vehicle. The police searched him and placed him in a patrol car.
The following day, Henderson was charged with one count of felonious assault, and the complaint alleged he caused or attempted to cause harm to Willie Wimberly with a gun. The state orally amended the complaint to complicity to commit felonious assault and the court found him delinquent of the amended complaint. Subsequently, the court committed Henderson to the Ohio Department of Youth Services for a minimum period of one year and a maximum period not to exceed his twenty-first birthday.
In his first assignment of error, Henderson alleges Wimberly's identification of him was unduly suggestive and unreliable.
This court has held even if a pretrial identification procedure is impermissibly suggestive, an in-court identification is permissible where the prosecution establishes by clear and convincing evidence that each witness had a reliable independent basis for the identification based on prior independent observations made at the scene of the crime.[1] When a witness has been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances.[2] However, no due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation, but is instead the result of observations at the time of the crime.[3]
In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification.[4]
Henderson argues the only identification Wimberly made was when he saw Henderson in the back of the police car. However, Wimberly had an opportunity to view Henderson at the time of the incident as he approached him on foot and recognized him and the shooter as the same individuals he saw in the red truck. Wimberly testified the street was well lighted and Henderson was the "darker-skinned" male wearing a black jacket who he saw with the shooter on the street. Consequently, the identification of Henderson in the car is of no consequence. Further, the description was provided to the police approximately eight days after the incident.
Therefore, based on the factors enumerated in Waddy, we conclude Wimberly's identification was not unduly suggestive or unreliable. Accordingly, this assignment of error is overruled.
In his second assignment of error, Henderson argues his adjudication of delinquency was not supported by sufficient evidence. We disagree.
Regarding the sufficiency of the evidence against Henderson:
 The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.* * *.[5]
The test for sufficiency of the evidence raises a question of law to be decided by the court before the jury may receive and consider the evidence of the claimed offense. In State v. Jenks,[6] the court stated:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citations omitted.)
In this case, the state assumed the burden of proving Henderson's guilt beyond a reasonable doubt for the crime of complicity to commit felonious assault. Complicity is defined in R.C. 2923.03(A) as follows:
 No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 (2) Aid or abet another in committing the offense; * * *.
Further, R.C. 2903.11(A) defines felonious assault and states:
(A) No person shall knowingly:
 (2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance * * *.
To support Henderson's felonious assault conviction under complicity principles, the record must establish that he either(2) solicited, aided, abetted, or conspired with another to commit the offense.[7] The court in In re Moore[8] noted, "Under R.C. 2923.03, a person may be an accomplice in an offense and prosecuted as the principal offender if, among other things, he aids or abets another in committing the offense while acting with the kind of culpability required for commission of the offense."[9] "To aid is to assist. To abet is to incite or encourage."[10] A person's mere association with a principal offender is not an aiding or abetting of the principal's act; there must be some active participation, assistance, or encouragement by the accomplice.[11] Further, the accomplice's criminal intent may be inferred, by direct or circumstantial evidence, from the presence, companionship, and conduct of the accomplice both before and after the offense is committed.[12]
In In re Washington,[13] a juvenile was adjudicated delinquent as an aider and abettor to aggravated murder and aggravated robbery for his active participation in a plan to rob a cab driver at gunpoint. In that case, Washington and two others entered the cab and demanded the cab driver's money. When the cab driver saw Washington's accomplice had a shotgun, the driver attempted to put the cab in gear, at which time the accomplice shot him dead. Washington argued that the evidence was insufficient to prove he acted with the requisite intent to cause death while aiding or abetting another person in the commission of the crime. The Supreme Court of Ohio held that the intent to kill could be inferred from Washington's participation in planning and executing the robbery, noting:
 The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court.[14]
The Washington court concluded that because Washington participated in the planning, rehearsal, and execution of the armed robbery and that the intent was to scare the victim into complying by brandishing an operable gun, a rational trier of fact could find that Washington acted with the requisite intent to kill even though Washington did not pull the trigger.
Other cases likewise confirm that an offender who assists, incites, or otherwise encourages another to shoot may be found to have aided and abetted in the murder. In In re Jones,[15] Jones was adjudicated delinquent for complicity to murder when, during an altercation, Jones reportedly handed a gun to an accomplice who then fatally shot the victim. Jones argued that the state failed to prove he possessed the requisite intent to kill the victim. The court held that Jones' delinquency adjudication was not against the manifest weight of the evidence, implicitly confirming that the evidence was at least sufficient to permit the trier of fact to weigh that evidence.[16]
Because the intent of an accused person dwells in his mind, we must examine the surrounding facts and circumstances to determine whether Henderson aided or abetted the shooter in committing felonious assault. In this regard, we can determine by his actions that Henderson's complicity to commit felonious assault began at the moment the shooter told Wimberly "don't try to run" and Henderson was present when the shooter pulled out the gun. His complicity continued when he ran with the shooter and the shooter fired the weapon. By his conduct, Henderson encouraged the crime and his criminal intent may be inferred from his presence, companionship and conduct both before and after the shooting[17]. Accordingly, this assignment of error is overruled.
In his final assignment of error, Henderson argues his adjudication of delinquency is against the manifest weight of the evidence.
Regarding the manifest weight of the evidence, the court in State v.Martin[18], stated:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
Additionally, in State v. Thompkins,[19] the court noted:
 Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.
Further, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact.[20]
After reviewing the entire record in this case, weighing the evidence and all reasonable inferences and considering the credibility of the witnesses, we cannot conclude that in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. The facts of the case as stated by Wimberly establish that Henderson was side-by-side to the shooter at the time when the shooter pulls a weapon and orders the victim not to run. Henderson then turns alongside the shooter, runs, and the shooter fires the gun. This is the requisite quality evidence to establish the crime of aiding and abetting felonious assaults against the victim. Accordingly, this assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Juvenile Court Division of Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and JOHN T. PATTON*, J., CONCUR.
* SITTING BY ASSIGNMENT: JUDGE JOHN T. PATTON, RETIRED, OF THE EIGHTH DISTRICT COURT OF APPEALS.
[1] State v. Broom (Apr. 11, 1991), Cuyahoga App No. 58386, unreported at 8, (citing State v. Hurt (1972), 30 Ohio St.2d 86, 89,282 N.E.2d 578.
[2] State v. Waddy (1992), 63 Ohio St.3d 424, 438, 588 N.E.2d 819,830-831, citing Manson v. Brathwaite (1977), 432 U.S. 98, 116,97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155, and Neil v. Biggers (1972), 409 U.S. 188,196-198, 93 S.Ct. 375, 381-382, 34 L.Ed.2d 401, 410-411. See, also, Statev. Davis (1996), 76 Ohio St.3d 107, 666 N.E.2d 1099.
[3] Coleman v. Alabama (1970), 399 U.S. 1, 5-6, 90 S.Ct. 1999,2001, 26 L.Ed.2d 387, 394.
[4] Waddy, 69 Ohio St.3d at 439 588 N.E.2d at 831, citing Neil,409 U.S. at 199-200, 93 S.Ct. at 382, 34 L.Ed.2d at 411.
[5] Crim.R. 29(A).
[6] (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.
[7] See R.C. 2923.03; State v. Messer, 2001 Ohio App. LEXIS 5256.
[8] 2000 Ohio App. LEXIS 354, (Feb. 3, 2000), Cuyahoga App. No. 75673, unreported.
[9] State v. Coleman (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, syllabus at para. 2.
[10] State v. Sims (1983), 10 Ohio App.3d 56, 58, 460 N.E.2d 672.
[11] See State v. Nievas (1997), 121 Ohio App.3d 451, 456,700 N.E.2d 339; State v. Sims, supra.
[12] See State v. Nievas, 121 Ohio App.3d at 456-457; State v.Pruett (1971), 28 Ohio App.2d 29, 34, 273 N.E.2d 884.
[13] (1998), 81 Ohio St.3d 337, 691 N.E.2d 285.
[14] Washington, 81 Ohio St.3d at 340 (quoting State v. Huffman
(1936), 131 Ohio St. 27, 1 N.E.2d 313, syllabus at para. 4).
[15] 1998 Ohio App. LEXIS 4679 (Sept. 30, 1998), Franklin App. No. 98AP-152, unreported.
[16] See, also, State v. Fields (1995), 102 Ohio App.3d 284,656 N.E.2d 1383 (evidence sufficient to convict defendant for complicity to murder when defendant goaded accomplice to shoot victim); In reJohnson (Dec. 20, 1996), Montgomery App. No. 15299, unreported (evidence sufficient to adjudicate juvenile delinquent for complicity to murder when juvenile told accomplice to shoot).
[17] Nievas, supra.
[18] (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
[19] (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.
[20] State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.