[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 337.]

IN RE WASHINGTON.

[Cite as *In re Washington*, 1998-Ohio-627.]

*Juvenile law—Adjudication of delinquency for aggravated murder supported by sufficient evidence, when.*

(No. 96-2706—Submitted November 5, 1997 at the Cleveland-Marshall College of Law Session—Decided April 1, 1998.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 69283.

_____

{¶ 1} On January 3, 1995, a group of youths including Patrick Washington ("Washington") planned and rehearsed the robbery of a taxicab driver. That same day, at approximately 5:30 p.m., Ronald LaShore was robbed and shot to death while he was driving his taxicab.

{¶ 2} At about 4:00 p.m. on January 3, 1995, Washington, Antonio Robinson, Brian Washington (Washington's brother), Eric Fluitt, and Leland Watkins were at Robinson's house discussing how to rob a cab. During the discussion, Washington had a .38-caliber gun and Watkins had a two-foot, 12-gauge shotgun. They talked about the role each would play in the robbery and practiced what they would do. During the rehearsal, in which Washington took an active part, Watkins played with his shotgun by cocking and uncocking it and by pointing it at people. The basic plan was to cock the gun to frighten the cab driver and then search the driver for money or a gun.

{¶ 3} Shortly thereafter, Washington called a cab. While Washington and the others waited outside for the cab to arrive, Robinson, possibly at the direction of Washington, shot the windshield of a car parked nearby with Watkins's shotgun.

At approximately 5:30 p.m., the cab arrived and Brian Washington, Fluitt, and Watkins, carrying his shotgun, got into the cab.[1]

{¶ 4} Upon arriving at the group's destination, Watkins displayed his shotgun and told the driver to give him all his money. When the driver saw the gun, he attempted to put the cab in gear, at which time Watkins shot him.

{¶ 5} Patrick Washington was charged with and adjudicated delinquent for aggravated murder, R.C. 2903.01, and aggravated robbery, R.C. 2911.01, as an aider and abettor. On appeal, Washington argued that the adjudication of delinquency for aggravated murder was not supported by sufficient evidence. The court of appeals agreed and reversed upon finding insufficient evidence in the record for the trial judge "to be able to infer that appellant Patrick Washington had the requisite intent for aggravated murder." The court of appeals affirmed the adjudication of delinquency for aggravated robbery, which issue is not before this court.

{¶ 6} The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, *Randi Marie Ostry*, *George J. Sadd* and *Patrick J. McCarthy*, Assistant Prosecuting Attorneys, for appellant.

*James A. Draper*, Cuyahoga County Public Defender, and *Valerie R. Arbie*, Assistant Public Defender, for appellee.

_____

**PFEIFER, J.**

{¶ 7} In this case we are asked to determine whether there was sufficient evidence before the trial court to support the adjudication of delinquency for

1. Some testimony suggests that LaShore's cab was not supposed to be robbed and that a second cab was the real robbery target. No other cab showed up.

aggravated murder. We conclude that there was and accordingly reverse the judgment of the court of appeals and reinstate the determination of the trial court.

{¶ 8} This court recently stated that "[a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶ 9} Since Washington was adjudicated delinquent as an aider or abettor, we turn initially to R.C. 2923.03 (the complicity statute) and then to the statute governing aggravated murder, R.C. 2903.01, to determine the essential elements of the offense. Accordingly, we must examine the record to determine whether there was sufficient evidence before the trial court to support its finding that Washington acted with the intent to cause death while aiding or abetting another person in the commission of aggravated murder. R.C. 2929.03; *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph two of the syllabus.

{¶ 10} Former R.C. 2903.01(B) states that "[n]o person shall purposely cause the death of another while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery or robbery * * *." 139 Ohio Laws, Part I, 3. The record is replete with evidence that Washington participated in the planning and rehearsal of a robbery and that, during the actual robbery, LaShore was killed.[2] Accordingly, upon viewing the evidence in the light most favorable to the prosecution, we conclude

---

2. The record contains some evidence that Washington was the mastermind behind the entire scheme and that he was intended to be the principal participant.

that a rational trier of fact *could* have found the essential element of aiding or abetting another in the commission of aggravated murder proven beyond a reasonable doubt.

{¶ 11} Even so, Washington cannot be adjudicated delinquent for aggravated murder based solely on his complicitous actions. It is also necessary for the state to establish that Washington acted "with the kind of culpability required of the commission of [aggravated murder]." R.C. 2923.03(A).

{¶ 12} Former R.C. 2903.01(D) states that "[n]o person shall be convicted of aggravated murder unless he is specifically found to have intended to cause the death of another. In no case shall a jury in an aggravated murder case be instructed in such a manner that it may believe that a person who commits or attempts to commit any offense listed in division (B) of this section is to be conclusively inferred, because he engaged in a common design with others to commit the offense by force and violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit, the offense. If a jury in an aggravated murder case is instructed that a person who commits or attempts to commit any offense listed in division (B) of this section may be inferred, because he engaged in a common design with others to commit the offense by force or violence or because the offense and the manner of its commission would be likely to produce death, to have intended to cause the death of any person who is killed during the commission of, attempt to commit, or flight from the commission of or attempt to commit the offense, the jury also shall be instructed that the inference is nonconclusive, that the inference may be considered in determining intent, that it is to consider all evidence introduced by the prosecution to indicate the person's intent and by the person to indicate his lack of intent in determining whether the person specifically intended to cause the death of the person killed, and that the prosecution must prove the

4

specific intent of the person to have caused the death by proof beyond a reasonable doubt." 139 Ohio Laws, Part I, 3-4.

{¶ 13} Washington cannot be adjudicated delinquent for aggravated murder unless he is proven to have "intended to cause the death of another." "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." *State v. Huffman* (1936), 131 Ohio St. 27, 5 O.O. 325, 1 N.E.2d 313, paragraph four of the syllabus. See *State v. Garner* (1995), 74 Ohio St.3d 49, 60, 656 N.E.2d 623, 634. The General Assembly has provided that intent to kill may be proved by inference. R.C. 2903.01(D). Where, as in this case, the prosecution seeks to prove intent to kill by establishing the defendant's participation in planning and executing a robbery, the factfinder may infer the defendant's intent to kill and may base its finding of intent to kill solely on that inference. That the state has produced sufficient evidence to permit the factfinder to draw the inference does not mandate a finding that the defendant possessed a specific intent to kill. In weighing the evidence, the factfinder remains bound to consider all evidence of the defendant's intent to kill, including the defendant's evidence on lack of intent to kill. R.C. 2903.01(D) requires judges to instruct juries accordingly.

{¶ 14} Prior to the enactment of former R.C. 2903.01(D) in 1981, this court stated that "[a] jury can infer an aider and abettor's purpose to kill where the facts show that the participants in a felony entered into a common design and *either* the aider or abettor knew that an inherently dangerous instrumentality was to be employed to accomplish the felony *or* the felony and the manner of its accomplishment would be reasonably likely to produce death." (Emphasis *sic*.) *State v. Scott* (1980), 61 Ohio St.2d 155, 165, 15 O.O. 3d 182, 189, 400 N.E.2d 375, 382, citing *State v. Lockett* (1976), 49 Ohio St.2d 48, 3 O.O.3d 27, 358 N.E.2d

1062, paragraphs three and four of the syllabus. The trial court relied on *Scott* in inferring Washington's intent to kill and the court of appeals reversed, primarily because of its belief that *Scott* had been superseded by former R.C. 2903.01(D). We conclude that *Scott*, which addresses the sufficiency of the evidence presented to support a finding of intent to kill, and R.C. 2903.01(D), which addresses the jury instructions to be given when intent to kill can be inferred, are compatible.

{¶ 15} Washington, Robinson, Brian Washington, Fluitt, and Watkins planned and rehearsed an armed robbery. They intended to scare the victim into complying with their demands by brandishing a weapon, as it turned out, Watkins's loaded shotgun. Watkins's shotgun had been demonstrated to be capable of firing when Robinson shot the windshield of a parked car. Based on this and other evidence in the record, which, under a sufficiency review, we must review in the light most favorable to the prosecution, we conclude that a rational trier of fact *could* have found the essential element of intent to kill proven beyond a reasonable doubt.[3]

{¶ 16} The trial judge stated to Washington at his adjudication and disposition proceeding that "[w]e *can* infer your intention through different actions that took place, different evidence and different things that were said. From the evidence that was presented, we *can* infer that you had intent to murder." (Emphasis added.) These statements further indicate that, in weighing the evidence, the trial judge determined that Washington possessed the intent to kill only after hearing and considering all the evidence, as is required by R.C. 2903.01(D). In using the verb "can," the judge indicated that he was able to infer intent to cause the death of another, not that he was compelled or required to do so.

---

3. As previously noted, it is not necessary for us to be convinced beyond a reasonable doubt that Washington aided or abetted with the intent to cause the death of another. Our inquiry is limited to determining whether viewing the evidence in the light most favorable to the prosecution, a rational trier of fact *could* have found the essential elements of the crime proven beyond a reasonable doubt.

**{¶ 17}** In its brief, the state accused the court of appeals of conducting a trial *de novo*.  The court of appeals did no such thing.  It examined the legal standard of inferred intent and determined that the standard had not been properly applied.  That we disagree means the court misinterpreted the law, not that it acted improperly in ruling on the issue at all.

**{¶ 18}** For the reasons stated above, we reverse the judgment of the court of appeals and reinstate the adjudication of delinquency for aggravated murder reached by the trial court.

*Judgment reversed*
*and adjudication of*
*delinquency reinstated.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

————————