[Cite as *State v. Howard*, 2012-Ohio-3523.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    11CA010130 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| HENRY HOWARD | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    11CR082752 |

DECISION AND JOURNAL ENTRY

Dated: August 6, 2012

BELFANCE, Judge.

{¶1}    Defendant-Appellant Henry Howard appeals from his conviction in the Lorain County Court of Common Pleas.  For the reasons set forth below, we affirm.

I.

{¶2}    Mr. Howard was indicted on May 4, 2011, for one count of intimidation, in violation of R.C. 2921.03(A), a felony of the third degree.  The case proceeded to a bench trial, after which the trial court found Mr. Howard guilty.  Mr. Howard was sentenced to two years in prison.

{¶3}    Mr. Howard has appealed, raising two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE VERDICT IS AGAINST THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF MR. HOWARD'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES

CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶4} Mr. Howard asserts in his first assignment of error that there was insufficient evidence to support a guilty verdict on the charge of intimidation. We do not agree.

{¶5} In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991). Furthermore:

> [a]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶6} R.C. 2921.03(A) states:

> No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty.

{¶7} "'Public servant' means * * * [a]ny public official[.]" R.C. 2921.01(B)(1). "'Public official' means any elected or appointed officer, or employee, or agent of the state or any political subdivision, whether in a temporary or permanent capacity, and includes, but is not limited to, legislators, judges, and law enforcement officers." R.C. 2921.01(A). Mr. Howard's indictment was broadly written to include the entire contents of the statute; thus, the State alleged that Mr. Howard's prohibited conduct was "by unlawful threat of harm to any person *or* property[.]" (Emphasis added.) At trial, the State presented evidence as to both harm to person and to property, and, though it primarily focused on the conduct directed at Corrections Officer

Robert Elfers, the State also argued that Mr. Howard made an unlawful threat of harm to property.

{¶8} On February 17, 2011, Mr. Howard was an inmate at Lorain Correctional Institution ("LCI"). Mr. Elfers testified concerning the events that occurred that day in the early hours of the morning. Mr. Elfers testified that his duty is to "maintain the safety and the security of the institution." Five corrections officers and a lieutenant were called to the segregation area of the prison because inmates in cell 119 had "kicked the sprinkler head off the wall, and they were just throwing stuff around their cell." The corrections officers were supposed to "extract two people out of the[] cell" and "stop them from hurting themselves and destroying state property." At the time, Mr. Howard was located in cell 120. Mr. Howard began yelling at Mr. Elfers, saying "'Do you remember me, CO? I remember you. I don't like you, and I know you don't like me." According to Mr. Elfers, Mr. Howard told Mr. Elfers that "if he wasn't locked behind that door, how he would break something on [Mr. Elfers], one-on one in a fight. And it got to the point to where he said when he catches another case, he was going to come back on the compound and kill [Mr. Elfers]." Mr. Howard also stated that he was in segregation because he "already [messed] one of [the] * * * CO[s] up."

{¶9} Mr. Elfers was concerned about what Mr. Howard said because he knew of Mr. Howard's involvement in the prison gang known as the Heartless Felons and Mr. Elfers had been previously attacked by an inmate a year prior. Mr. Elfers testified that he believed Mr. Howard's threat and felt that Mr. Howard would come back and kill him or have someone else do it. Mr. Elfers indicated that Mr. Howard's threats made him anxious and very cautious. In addition, the incident required Mr. Elfers to take blood pressure medication. Mr. Elfers stated that Mr.

Howard's threats have interfered with his ability to do his job because now he looks at people, thinking, "'[I]s this guy the one who is going to get me?'"

{¶10} Another corrections officer, Timothy Collier, who also was part of the team sent to deal with the situation in cell 119, also testified. He stated that he heard Mr. Howard threaten Mr. Elfers and that, particularly since Mr. Howard had previously assaulted another corrections officers, Mr. Collier took Mr. Howard's threat seriously.

{¶11} Additionally, Mr. Howard stated to the lieutenant that, if Mr. Howard did not get new linens that night because of the flooding in the cell next door extending into his cell, Mr. Howard was going to the knock the sprinkler head off of the wall in his cell. Mr. Collier testified that, if Mr. Howard followed through on his threat to break the sprinkler in his cell, the corrections officers would "have to go shut down the whole fire system for the sprinkler head, and they would have to be shut off until it c[ould] be repaired." In addition, there would need to be extra staff placed in the area to "go on a fire watch[]" until the problem was fixed.

{¶12} Almost immediately after the incident, Mr. Elfers wrote a conduct report describing the incident, and, a few weeks later when talking to a state trooper investigating an unrelated matter, Mr. Elfers also reported this incident to the trooper.

{¶13} Viewing this evidence in a light most favorable to the prosecution, we conclude that the State presented sufficient evidence, if believed, that Mr. Howard attempted to influence, intimidate, or hinder Mr. Elfers and/or one of the other officers in the discharge of that person's duty by making an unlawful threat of harm to Mr. Elfers and by making an unlawful threat of harm to state property. *See* R.C. 2921.03(A). Mr. Howard seems to assert that his actions had to have actually influenced, intimidated, or hindered Mr. Elfers in the performance of his duties. This is not the case, however. As this Court has noted before, the statute requires only an

*attempt* to "influence, intimidate, or hinder" a public servant in his or her duties; it does not require that the offender be successful. *Id. See State v. Basterfield,* 9th Dist. No. 94CA005985, 1996 WL 48545, *3 (Feb. 7, 1996) (citing a former version of the statute with language that mirrors the language at issue). Mr. Howard threatened Mr. Elfers' life, and, at the time of the threat, Mr. Elfers was engaged in work as a public servant. Given the statements made by Mr. Howard and the context in which he made the statements, it is not unreasonable to infer that Mr. Howard attempted to influence, intimidate, or hinder Mr. Elfers in the performance of his duties via an unlawful threat of harm to him. Further, Mr. Howard threatened to break the sprinkler system in his cell. There was testimony that such an act would require the staff to shut down the fire system and bring more staff to the area. It is not unreasonable to infer that doing such would thereby hinder a public servant in the discharge of his or her duties given the added work that would be created. Thus, there was sufficient evidence that Mr. Howard, by unlawful threat of harm to property, attempted to influence, intimidate or hinder the performance of the corrections officers' duties.

{¶14} Accordingly, we conclude the State presented sufficient evidence, if believed, that Mr. Howard violated R.C. 2921.03(A). Thus, we overrule his first assignment of error.

ASSIGNMENT OF ERROR II

> THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF MR. HOWARD'S RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO STATE CONSTITUTION.

{¶15} Mr. Howard asserts in his second assignment of error that the finding of guilt on the charge of intimidation is against the manifest weight of the evidence. We do not agree.

{¶16} In reviewing a challenge to the weight of the evidence, the appellate court:

[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶17} Mr. Howard asserts the verdict is against the manifest weight of the evidence based upon the reasoning outlined in *State v. Bowshier*, 167 Ohio App.3d 87, 2006-Ohio-2822 (2d Dist.). In *Bowshier*, the Second District concluded that Bowshier's conviction under R.C. 2921.03(A) was against the manifest weight of the evidence because there were competing inferences at play and the inference supporting Bowshier's view greatly outweighed the inference which supported the conviction. *See id.* at ¶ 65-68. Mr. Howard asserts that "[t]he evidence in this case presents the same two competing inferences[]" as those present in *Bowshier*. We disagree that the same two competing inferences are present in this case, and, although this Court has never adopted the reasoning of the Second District, we can think of no case which does not present competing inferences to some degree. Thus, the fact that there are competing inferences present does not, in and of itself, render a conviction against the manifest weight of the evidence.

{¶18} Moreover, the facts in *Bowshier* are easily distinguishable from the facts in the instant matter. In *Bowshier*, police came to Bowshier's residence and ultimately arrested him. *Id.* at ¶ 5-48. Bowshier, who appeared intoxicated, was furious at being arrested, and began threatening police and ranting. *Id.* at ¶ 6, 17. Unlike the defendant in *Bowshier*, here, it was Mr. Howard who initiated contact with the corrections officers. The corrections officers were there to address a problem in an adjacent cell and did not take any direct or provocative action against Mr. Howard. Moreover, given the nature and context of Mr. Howard's threats, his threats are far

less random and rambling than the threats made by Bowshier. From the testimony, the inference that Mr. Howard was attempting to influence, intimidate, or hinder a public servant via an unlawful threat of harm is much stronger than the inference that Mr. Howard was merely ranting. Moreover, unlike the defendant in *Bowshier*, Mr. Howard additionally made an unlawful threat of harm against state property. Mr. Howard's manifest weight argument does not even address this portion of the statute. *See* App.R. 16(A)(7). Accordingly, we conclude *Bowshier* is distinguishable. Upon carefully reviewing the entire record, we cannot conclude that the fact finder's credibility determinations and resolution of any competing inferences were unreasonable. Accordingly, we conclude that Mr. Howard's conviction for intimidation is not against the manifest weight of the evidence. We overrule Mr. Howard's second assignment of error.

### III.

**{¶19}** In light of the foregoing, we overrule Mr. Howard's assignments of error and affirm the judgment of the Lorain County Court of Common Pleas.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

EVE V. BELFANCE
FOR THE COURT


WHITMORE, P. J.
<u>CONCURS.</u>

CARR, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶20}  I concur in judgment solely on the basis that Howard threatened Mr. Elfers' life while he was engaged in work as a public servant.  As stated by the majority, "[g]iven the statements made by Mr. Howard and the context in which he made the statements, it is not unreasonable to infer that Mr. Howard attempted to influence, intimidate, or hinder Mr. Elfers in the performance of his duties via an unlawful threat of harm to him."  I would not affirm on the basis of the threat of harm to public property.


<u>APPEARANCES:</u>

PAUL GRIFFIN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.