[Cite as *State v. Thompson*, 2014-Ohio-1225.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    13 CO 20 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| JOHN THOMPSON, JR., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:        Criminal Appeal from Common Pleas
                                 Court, Case No. 12CR127.

JUDGMENT:                        Affirmed.

APPEARANCES:
For Plaintiff-Appellee:          Attorney Robert Herron
                                 Prosecuting Attorney
                                 Attorney Tammie Jones
                                 Assistant Prosecuting Attorney
                                 105 South Market Street
                                 Lisbon, Ohio  44432

For Defendant-Appellant:         Attorney Coleen Hall Dailey
                                 323 East Main Street
                                 Alliance, Ohio  44601

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

                                 Dated:  March 24, 2014

VUKOVICH, J.

{¶1}   Defendant-appellant John Thompson, Jr. appeals from his conviction of intimidation entered after a jury trial in the Columbiana County Common Pleas Court. He raises issues concerning sufficiency of the evidence, weight of the evidence, ineffective assistance of counsel for failure to list a witness in discovery, the court's exclusion of that witness as a discovery sanction, the court's instruction to a testifying witness to only answer the questions presented, and the jury instruction that whether the victim believed the threats was not relevant.   For the following reasons, these arguments are overruled, and the judgment of the trial court is affirmed.

### STATEMENT OF THE CASE

{¶2}   Appellant lived with Desiree Browning and her children (the youngest of which was appellant's child).  On June 11, 2012, Desiree's ten-year-old child called 911 to report that appellant was hitting his mom and making her cry.  The East Liverpool police responded.   One officer arrested appellant on an outstanding warrant for failing to appear on a driving under suspension charge.  The other officer stayed at the residence to take Desiree's statement as to the report of domestic violence.  She related that appellant hit, pushed, and choked her.  Red marks were observed on the side of her face and neck.

{¶3}   While appellant was handcuffed to a booking bench, he made five telephone calls from a recorded line at the police station.  First, he called Desiree, who used a speakerphone so the officer taking her statement could hear.  She told appellant that the children called the police, and he called her a liar.  He asked her if she knew what she did and what was going to happen, stating, "you got me all the way fucked up, you'll see when I get out."  Desiree pointed out to him that he hit her, and she advised him that he should not return to the house.

{¶4}   Appellant told her to be prepared and said, "You better just be reading the paper and, and seeing when I'm getting out."  He warned, "Just don't be there when I get there.  I promise you, if you're there you, you're not gonna like it."  He added: "Well you just watch and see.  Cause I'm telling you did, you, you, you just did the most fucked up thing you could do to yourself.  * * * Trust me.  You just pretty

much killed yourself.   * * * You think this is a game, you really think I'm playing.  You, you really do.  You really just don't know."  When Desiree noted that people would know who killed her, he stated, "And I'm just letting you know when I get out, do not be there.  Cause I swear I'll be there every day all day until I see you."  Finally, he stated, "I'm serious and I will have somebody up there today to, to jump on you so.  Just be prepared."

{¶5}   The second call appellant made was to a person who had appellant's sister on the other line.  He told this person to tell his sister to go to Desiree's house, warning that if his sister failed to "handle" the problem Desiree created with the police, then he would handle it when he is released.  Appellant then called Desiree again, advising her to leave her house and not come back because somebody was on the way there.  When she refused, he stated that she better lock her doors and hope no one gets in.

{¶6}   Then appellant called his sister directly and expressed that Desiree thinks he is "playing."  When he said that Desiree called the police, the sister asked how she called and whose phone she used.  When he responded that she called on her own phone, the sister said, "Oh, you gave it back to her?"  Appellant told his sister to go straighten it out "[c]ause if not, when I get out I am."  He soon called his sister back, telling her to go see Desiree and "scare the life out of her cause she want to pull that shit."  He also said she should talk to Desiree so he does not receive six months in jail for domestic violence (instead of thirty days for his failure to appear).

{¶7}   Appellant was charged with domestic violence based upon Desiree's report, and he was thereafter convicted.  Based upon the telephone calls, he was charged with intimidation of a victim in violation of R.C. 2921.04(B), a third degree felony.  The intimidation charge was tried to a jury.  The recordings of the 911 call and the five calls from appellant were played for the jury.  The two police officers also testified.

{¶8}   The defense then called Desiree to the stand.  She testified that she was fighting with the neighbor about whose children made a mess in the shared yard.  She said she was about to fight the neighbor but appellant pushed her to stop her from engaging in a fight.  Desiree claimed she then pushed appellant because she

was mad that he seemed to be taking the neighbor's side. She said that when appellant got sick of her pushing him, he went to smack the back of her head but she turned around so that he ended up slapping her face. (Tr. 74-76). Her neck was affected when he pushed or slapped her, but she said that he did not "choke" her. (Tr. 75, 84).

{¶9} Desiree testified that appellant was sad and hurt because he thought she called 911, noting that he did not yell and that he sounded calm during the calls. (Tr. 78, 82). She denied that she was ever scared or concerned by the calls and said that she did not feel bullied. (Tr. 78, 85). She stated that listening to the recordings in court made her "giggle." (Tr. 98). She suggested that this was just the way they talk to each other and that it meant nothing, calling the statements "empty threats." (Tr. 98-99). She asserted that she did not act intimidated, noting that she followed through with the domestic violence charge. When asked why she missed the initial pretrial for that case, she said her son was having a cast removed. (Tr. 79).

{¶10} Appellant testified to the same story concerning the argument with the neighbor and the altercation with Desiree. (Tr. 112-116). He noted that he took responsibility for the domestic relations charge in that separate case. As to this intimidation charge, he claimed that at the time he called Desiree from the police station, he had no knowledge of a possible a domestic charge and believed she only called the police to have him arrested on a failure to appear warrant. He said that he may have sounded threatening during the call, but he was trying to tell her it was a misunderstanding and he was frustrated. (Tr. 124). Appellant claimed that he knew what he said would not scare Desiree as she knows when he is sad and they often talk like this to each other without meaning what they say. (Tr. 125, 134-135). And, although he often talks like this to his sister about Desiree, he claims not to mean it. (Tr. 125, 128).

{¶11} The jury found appellant guilty of intimidation as charged. On April 11, 2013, the trial court sentenced him to twelve months in prison. Appellant filed the within appeal.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶12} Appellant raises five assignments of error, the first of which contends:

{¶13} "THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT-APPELLANT'S CONVICTION FOR INTIMIDATION AND THEREFORE IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶14} As the state points out, the analyses involved for weight and sufficiency are distinct. Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998); *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997).

{¶15} Appellant was charged with knowingly, by force or by unlawful threat of harm to Desiree Brown, attempting to influence, intimidate, or hinder her (as the victim of a crime) in the filing or prosecution of criminal charges. *See* R.C. 2921.04(B). Appellant suggests that the offense requires the creation of fear in the victim, noting that the Supreme Court has stated that intimidation by definition involves the creation of fear in a victim. *See State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 40.

{¶16} However, the statute provides three options: influence, hinder, *or* intimidate. The statute also plainly requires only an *attempt* to influence, intimidate, or hinder. R.C. 2921.04(B). Hence, intimidation itself is the creation of fear; however, the defendant need only *try* to create fear about *or* try to influence or hinder the filing or prosecution of criminal charges. *Id.* There is no requirement that the victim feel intimidated. *State v. Williams*, 8th Dist. No. 94261, 2011-Ohio-591, ¶ 14. *See also State v. Peace*, 6th Dist. No. L-82-361 (June 3, 1983). Actual intimidation is not an element of this offense. *State v. Thomas*, 6th Dist. No. L-02-1375, 2004-Ohio-6458, ¶ 22. *See also State v. Howard*, 9th Dist. No. 11CA010130, 2012-Ohio-3523, ¶ 13.

{¶17} The *Cress* case dealt with the issue of whether the state must prove that the defendant threatened to engage in "unlawful conduct," and the Court answered that question in the negative as "unlawful" modifies "threat" and the word

"conduct" is not in the statute; the Court then held that the phrase "unlawful threat of harm" is "satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." *See Cress*, 112 Ohio St.3d 72 at ¶ 1, 38, 41 (unlawful threat connotes more than just a threat). The Court thus found insufficient evidence where the defendant threatened to show people incriminating photographs, tell someone a secret, and not let the witness use his car again if the witness did not drop charges. Thus, *Cress* is not a case on point to any suggestion by appellant that he must have actually created fear.

{¶18} We note that threats of force and threats of impending criminal conduct are clearly covered by the intimidation statute's plain language. *See id.* at ¶ 42-43. *See also id.* at fn. 1. (where the *Cress* Court merely made the point that not *only* threats of impending criminal conduct are covered but also unlawful threats of harm). Appellant contends that there was no "unlawful" threat here but just a general allusion to unnamed negative consequences which were not unlawful. He urges that his statement that she ended her own life could be a threat or could be a statement that their relationship is over. This is a weight of the evidence question best left for a jury, not a sufficiency matter.

{¶19} Moreover, the perpetrator need not have expressly detailed what exact harm he is threatening. The context for the words at issue is important to ascertain whether an unlawful threat of harm was made. *See, e.g., State v. McCornell*, 8th Dist. No. 81581, 2003-Ohio-2474, ¶ 8 (meaning must be assessed in light of the surrounding circumstances); *State v. Lawson*, 9th Dist. No. 16886 (Dec. 7, 1994) ("Words are not scientific symbols. Their meanings are often dependent upon the context and manner in which they are used"); *State v. Brunswick*, 69 Ohio App. 407, 424, 44 N.E.2d 116 (1941) (whether language conveys a threat requires consideration of the circumstances under which words are spoken and the parties' relationship).

{¶20} Importantly, circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991). In some instances, it is even more reliable. *Id.* at 272. Moreover, intent is regularly inferred from the surrounding circumstances. *See, e.g., State v. Johnson*, 93 Ohio

St.3d 240, 243, 245-246, 754 N.E.2d 796 (2001); *State v. Collins* (2000), 89 Ohio St.3d 524, 530, 733 N.E.2d 1118 (2000). "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be." *In re Washington*, 81 Ohio St.3d 337, 340, 691 N.E.2d 285 (1998), quoting *State v. Huffman*, 131 Ohio St. 27, 1 N.E.2d 313 (1936), paragraph four of the syllabus.

**{¶21}** Some rational fact-finder could conclude that appellant's statements constituted unlawful threats of harm and constituted a knowing attempt to influence, intimidate, or hinder the victim in regards to the filing or prosecution of a domestic violence charge. This court has listened to the calls appellant placed. They were made after appellant had just hit and pushed her, leaving red marks on her face and neck. The police came to the house for him soon after this behavior. Appellant asked his sister to handle the situation with Desiree or he would upon release and advised his sister to "scare the life out of" Desiree so that she will not proceed with domestic charges. This is his own confirmation of his intent to scare Desiree, and this occurred within minutes of his calls to Desiree.

**{¶22}** During those calls he made various veiled threats, such as asking if she knew what is going to happen and if she knew what she did and stating that she better be prepared for when he gets out and she better read the paper to see when he gets out. Contrary to his claims, one could conclude that he was worried not only about a past warrant but about a possible domestic violence offense. Desiree pointed out to him that the children called the police, that he hit her, and that she did not deserve this, all suggesting the possibility of a domestic violence charge. And yet, appellant continued to tell her that if she is at the house when he gets out, she is not going to like what he does. He then announced: "you just did the most fucked up thing you could do to yourself" and "you just pretty much killed yourself." After ordering his sister to handle things, appellant called Desiree back to advise her to lock her doors as someone was on the way.

**{¶23}** In sum, notable surrounding circumstances here include the words used to the victim, the context of the words, the statements made to others, the timing and location of the calls, the relationship of the defendant to the victim, the

obvious red marks on her face and neck as police arrived and arrested appellant, her advisement to him that the *children* called the police, and her reminder that he hit her. We also note the indication that he had previously taken her telephone away from her, showing a further aura of intimidating (as opposed to joking or mutually derogatory) behavior. Viewed in the light most favorable to the state and considering all of the circumstances of the case, the statements appellant made can be classified by a reasonable juror as constituting an unlawful threat of harm and can be seen as a knowing attempt by appellant to influence Desiree's decision whether to have him charged with domestic violence or whether to proceed with the charges.

{¶24} In accordance, the state's case is not legally insufficient so as to take the case from the jury. Rather, the state presented legally adequate evidence on the essential elements of the offense. Rational inferences can be made as to his intent and his meaning, and when competing rational inferences can be made, there is not a valid sufficiency challenge. We thus move to the argument regarding the weight of the evidence.

{¶25} Weight of the evidence deals with the inclination of the greater amount of credible evidence to support one side of the issue over the other. *Thompkins*, 78 Ohio St.3d at 387. In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.*

{¶26} A reversal on weight of the evidence is ordered only in exceptional circumstances. *Id.* And, only a unanimous three judge panel can reverse a jury verdict on manifest weight grounds. Ohio Constitution, Art. IV, Section 3(B)(3). When there are two conflicting interpretations of the evidence, and the one chosen by the jury is not unbelievable, the appellate court is discouraged from sitting as "the thirteenth juror" and eliminating a jury verdict. *See, e.g., State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). *See also Thompkins*, 78 Ohio St.3d at 387.

**{¶27}** Appellant points to the victim's testimony that she did not feel threatened (and that she ended up following through with the domestic violence charge). As aforementioned, appellant's statements are the main item evaluated to determine intent for the intimidation offense. Whether the statements had the desired effect could be considered but is not part of the test; otherwise, only a successful intimidation could be prosecuted, and the plain language of the statute provides that an attempt is sufficient. R.C. 2921.04(B).

**{¶28}** In any event, Desiree's testimony on this topic can be disbelieved. Notably, the officer testified that Desiree asked him what to do if someone showed up as appellant threatened someone would. Yet, Desiree denied that she asked this of the officer. She also expressed that she did not want to proceed with this charge, referencing their love and their child. The jury could discount her denial and her testimony attempting to interpret appellant's recorded statements and his intent. The officer's testimony can be used as confirmation that she interpreted appellant's statements as credible threats at the time. Notably, the victim explained that one of the reasons she appeared at the rescheduled pretrial in the domestic case, rather than refusing to follow through with the charges, was because it was her child who called the police and she did not want him feeling like she did as a child (e.g. when she tried to save her mother from domestic abuse, her mother would call her a liar).

**{¶29}** The jury heard the recordings. That appellant did not yell is not a persuasive argument considering that he was handcuffed to a police bench in a police station while calling the woman he just hit. The jury heard appellant's statements and his voice during the calls, and they heard him testify. Moreover, appellant places much emphasis on the victim's claims that appellant was not being serious when he made the threats; however, at one point she did make an opposite statement. That is, during cross-examination by the state, Desiree was asked about appellant's comment to her that someone was coming to "jump on" her. She answered, "Yeah, *that's what he thought.* And like I told you his sister called me and we talked and we went to lunch the next day." (Emphasis added). (Tr. 90).

**{¶30}** In conclusion, appellant's intent to attempt to influence Desiree's decision on the domestic violence charge by making an unlawful threat of harm is a

matter within the jury's province. We thus defer to the fact-finder who is best able to weigh the evidence and judge the credibility of witnesses by viewing the demeanor, voice inflections, eye movements, and gestures of the witnesses testifying before it. *See Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984); *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). Exceptional circumstances do not exist here. In accordance, this assignment of error is overruled.

<u>ASSIGNMENTS OF ERROR NUMBER TWO</u>

**{¶31}** Appellant's second assignment of error provides:

**{¶32}** "DEFENDANT-APPELLANT'S COUNSEL WAS INEFFECTIVE IN THAT HE FAILED TO LIST A NECESSARY WITNESS ON HIS DISCOVERY RESPONSE AND WAS BARRED FROM PRESENTING THAT EVIDENCE."

**{¶33}** The defense called the victim as a witness. After her testimony, defense counsel asked to call appellant's sister, the person heard in three of the telephone calls. The state objected as her name had not been on the witness list provided by the defense in discovery. (Tr. 103). The state also urged that the jury had before it the calls and the testimony of the victim, and the sister's speculation as to appellant's intent was not relevant. (Tr. 153). The court sustained the objection. (Tr. 103).

**{¶34}** The next day, the defense proffered her testimony into the record. Defense counsel explained that he wanted her to testify about the meeting she had with Desiree the day after the incident, noting that Desiree testified that she had lunch with appellant's sister. (Tr. 149). He also wished to ask the sister about her prior interactions in arguments between appellant and Desiree so that he could show a past practice involving their conduct. (Tr. 150). He suggested that the sister could present evidence on their Maury Povich-like "culture" of disputes. (Tr. 150-151).

**{¶35}** Appellant argues here that counsel was ineffective for failing to list his sister on the witness list provided to the state in discovery. We review a claim of ineffective assistance of counsel under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 104, S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, a reviewing court will not deem counsel's performance ineffective unless a defendant

can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶36} Our review of counsel's performance is highly deferential as there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. Decisions regarding the calling of witnesses are generally within the purview of defense counsel's trial tactics. *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, ¶ 118; *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). In this case, we have the decision not to list a witness in discovery which resulted in the inability to call the witness at trial.

{¶37} Counsel could have listed the sister; in hindsight, he apparently wished that he did; but, we do not use hindsight to find deficient performance. *See State v. Keenan*, 81 Ohio St.3d 133, 152, 689 N.E.2d 929 (1998). The victim testified on appellant's behalf. During cross-examination by the state, Desiree was asked about appellant's comment to her that someone was coming to "jump on" her. She disclosed that she talked to appellant's sister when she called on the day of the incident and that she went to lunch with her the next day. (Tr. 89-90). Counsel informed the court that he was unaware until then that Desiree had lunch with appellant's sister. (Tr. 108). Counsel may also have been unaware that the victim was going to "giggle" while the recordings were being played to the jury, possibly prompting counsel to find a witness to the parties' relationship in order to try for a "Maury Povich show" defense to intimidation.

{¶38} Where counsel learns information at trial and seeks to expand upon or rebut it with a non-listed witness, the failure to list that witness previously need not be labeled deficient performance. *See State v. Gregory*, 12th Dist. No. CA91-03-052 (Sept. 30, 1991) (not ineffective for failing to list defendant's mother as a witness in discovery where counsel did not learn until mid-trial that it was claimed that the defendant had a red tip in his hair and wished to call defendant's mother to rebut this). *See also State v. Valentine*, 8th Dist. No. 40677 (Feb. 28, 1980) (record must show counsel should have known about a material witness). Here, counsel knew about the witness, but there is no indication that counsel should have known that the

victim, who was testifying for the defense, would add that she had lunch with the sister, or would laugh during the recordings.

**{¶39}** In addition, ineffective assistance of counsel claims require a showing of prejudice. A defendant must demonstrate that, but for the alleged deficiency of counsel, a reasonable probability exists that the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

**{¶40}** Supposedly, the sister was going to confirm the victim's testimony that they went to lunch the day after the incident. This may show that the sister did not follow through with appellant's request to scare the victim. But, the sister is not on trial, and as aforementioned, an attempt to intimidate, influence, or hinder by making an unlawful threat need not be successful. In addition, the calls to the sister were just bolsters for appellant's intent. The crux of the matter concerned the calls to the victim. The sister had no involvement in those calls. *See, e.g., In re Tripp*, 4th Dist. No. 01CA8 (Oct. 1, 2001) (the excluded witness did not witness or have first-hand knowledge of the offense at issue).

**{¶41}** Appellant already had Desiree testifying for him; she witnessed appellant's behavior during the domestic violence incident, she answered his two telephone calls thereafter, she was his long-time girlfriend and the mother of his child, and she was the victim of the very offense at issue. Appellant and the victim testified that appellant did not mean to scare the victim. The sister's possible testimony confirming that appellant always talked like this or expressing her belief on appellant's intent would have been repetitive and is fairly speculative.

**{¶42}** The exclusion of appellant's sister from testifying does not undermine our confidence in the outcome here. In any event, we found no error by counsel. This assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER THREE</u>

**{¶43}** Appellant's third assignment of error provides:

**{¶44}** "THE JUDGE ABUSED HIS DISCRETION IN PREVENTING A NECESSARY WITNESS FROM TESTIFYING DUE TO COUNSEL'S FAILURE TO LIST THE WITNESS ON DEFENDANT'S DISCOVERY RESPONSE."

**{¶45}** Appellant contends that the court abused its discretion in excluding his sister's testimony as the state would not have been prejudiced since they knew of her existence from the recordings. Appellant urges that the court should have imposed the least punitive discovery sanction such as providing the state a continuance.

**{¶46}** Pursuant to Crim.R. 16(I), each party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal. If a party fails to comply with the discovery rules, the trial court may order the party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances. Crim.R 16(L)(1).

**{¶47}** The trial court has discretion in determining a sanction for a discovery violation. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 33. An abuse of discretion exists when the decision is arbitrary, unconscionable, or unreasonable, including a failure to engage in a sound reasoning process. *Id.* at ¶ 34. The standard is deferential and does not permit the reviewing court to substitute its judgment for that of the trial court. *Id.* (finding that the trial court erred in dismissing the case due to the state's discovery violations as there was not enough information to determine nature of the undisclosed material).

**{¶48}** The Supreme Court has stated that a trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery. *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 5, 511 N.E.2d 1138 (1987). Factors to be considered include the extent of surprise or prejudice to the state, the impact of witness preclusion on the evidence at trial and the outcome of the case, whether violation of the discovery rules was willful or in bad faith, and the effectiveness of less severe sanctions. *Id.*

**{¶49}** The Court emphasized that they were not saying that the exclusion of testimony or evidence is never a permissible sanction in a criminal case. "It is only when exclusion acts to completely deny defendant his or her constitutional right to present a defense that the sanction is impermissible." *Id.*

**{¶50}** *Papadelis* involved the defense's total failure to respond to the state's request for discovery, and the subsequent trial court decision to exclude all witnesses which the defense intended to present at trial. One of the excluded witnesses would have provided a defense to appellant's charge of failing to heat an occupied building as he would have testified that the boiler was set at seventy-five degrees, was working, and was providing adequate heat. He would have explained that he responded to a call about the building being cool and he advised individuals at the building that they must stop leaving the garage doors open as this makes it difficult to provide proper heat due to insulation issues in the garage. Another excluded witness would have confirmed that garage doors had been left open for two days. The Supreme Court found that this testimony "was obviously material and relevant to the offense charged." *Id.* at 4. The Court concluded that the effect of the sanction of exclusion denied that defendant the right to present a defense. *Id.*

**{¶51}** Here, the defendant was not denied the right to present a defense. His entire line of defense was not excluded at trial as was the case in *Papadelis*. Defense counsel submitted a witness list here. His star witness, the victim, tried her best to downplay the statements he made to her. And, appellant testified along the same lines. Prejudice to the state involved the fact that they were not prepared for this witness. Appellant states that it was disingenuous for the prosecution to claim that they did not know the sister's last name. However, there is nothing on the record that the state investigated what the sister's last name was or where she lived or whether she had a criminal record. They had the recorded telephone calls; appellant's own recorded statements and the officers' testimony constituted their case. They did not need other testimony.

**{¶52}** Counsel did not list appellant's sister as a witness because he did not know that the victim and the sister went to lunch until hearing the victim mention that they went to lunch. He also wished to use her to bolster the testimony concerning the parties' unconcernedly volatile relationship (as if to argue that where two people enjoy threatening each, one other cannot commit the crime of intimidation after one speaks to police about domestic violence).

**{¶53}** During the middle of the defense's presentation of its case, trial counsel changed his mind as to whether appellant's own sister, whom he asked for assistance in frightening the victim on a recorded police line, would be useful to the case. However, the arguments concerning the importance of adding her to the list in the middle of the defense's case were not compelling. Notably, it was not information presented in the state's case that prompted the change of mind regarding this witness. Rather, it was information presented in the defendant's own case by his own witness, the victim who was against these charges being brought, that caused the change of mind.

**{¶54}** In any event, there is no indication that the sister's testimony would have provided anywhere near the benefit that the victim's testimony provided to the defense. Moreover, the sister's testimony was not material to whether the statements were made; those statements were recorded at the police station and played for the jury. They were also heard by the victim and the officer who was with the victim listening to the calls on speakerphone. The sister was not present during the arrest or at the police station or at the house during the calls. Any anticipated attempt by the sister to interpret what appellant intended when he made the two telephone calls to the victim soon after his arrest would have been speculative (and repetitive of the victim's testimony). This portion of the proffer involved "simply a background family witness" rather than a fact witness. *See In re G.E.S.*, 9th Dist. No. 23963, 2008-Ohio-2671, ¶ 20.

**{¶55}** The crux of the case involved the calls placed to the victim, not those placed to the sister. And, the jury heard all of the calls. As aforementioned, the sister was not on trial. That she went to lunch with the victim rather than following through with appellant's request to scare the victim is not some major point in appellant's favor. (In fact, at one point, appellant expressed to his aunt disappointment with his sister seeming to side with the victim.) And, the victim already testified to the lunch. Thus, this portion of the sister's proffered testimony would have been merely corroboration of a side point.

**{¶56}** The exclusion of this witness is not prejudicial under the circumstances of this case. The contents of the proffer minimally add to testimony already

presented to support appellant's theory, and the impact of preclusion at trial would barely register in the balancing test. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). The evidence was there for the jury, and the addition of the proffered testimony by the sister would not have impacted the outcome. For all of the reasons expressed here and the reasons set forth in the prior assignment (concerning why the exclusion of this witness was not prejudicial), this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER FOUR

**{¶57}** Appellant's fourth assignment of error contends:

**{¶58}** "THE JUDGE ABUSED HIS DISCRETION WHEN HE INSTRUCTED THE VICTIM FROM TESTIFYING CONCERNING WHAT SHE WANTED ABOUT THE CRIMINAL CHARGES OF INTIMIDATION OF A WITNESS WITHOUT OBJECTION FROM THE STATE."

**{¶59}** The victim was not called by the state, but she was called by the defense. She testified that she did not miss the first pretrial for the domestic violence charge in order to have the charges dropped but because her son had an appointment to have his cast removed. On cross-examination by the state, it was elicited that she loved the defendant and that they were going to get married. The state then queried, "None of that changes what happened on June 11, 2012; does it?" The victim responded, "No, but he's already went to trial for the domestic. So I didn't know that's what we was here for again." The prosecutor observed, "You're right. This is not about the domestic."

**{¶60}** At that point, the victim declared, "Okay. And I've asked you to drop this Intimidating a witness charge." (Tr. 95). The state began, "Ma'am * * *," at which point the court interjected: "Wait a minute. The jury is instructed to disregard that comment. Please do not volunteer anything. You only answer the questions. Do you understand?" (Tr. 95-96).

**{¶61}** Under this assignment of error, appellant complains that the trial court should not have inserted itself into the proceedings. Appellant urges that the victim should be able to testify that she did not believe his behavior warranted this charge.

**{¶62}** The state points out that the defense did not object at trial these statements by the trial court and the issue is waived for purposes of appeal. Any review of the issue would be discretionary on the part of this court and would proceed only under a plain error review. *See State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62. Crim.R. 52 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Noling*, 98 Ohio St.3d 44 at ¶ 62.

**{¶63}** The state also notes that the trial court is authorized to exercise control over the courtroom. Evid.R. 611(A) provides in pertinent part that the court shall exercise reasonable control over the mode of interrogating witnesses and presenting evidence so as to make the interrogation and presentation effective for the ascertainment of the truth and to avoid needless consumption of time. Evid.R. 611(A). *See also* R.C. 2938.07 ("The magistrate or judge of the trial court shall control all proceedings during a criminal trial and shall limit the introduction of evidence and argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of truth regarding the matters in issue.").

**{¶64}** We note that the prosecutor was about to say something; it may have been to tell the witness that a question had not yet been asked as she had interrupted. Regardless, contrary to appellant's suggestion here, a trial court need not wait for the state to voice that the witness is making statements without waiting for a question. *See, e.g., Conyers v. Rushing*, 1st Dist. No. C-790426 (July 23, 1980) (where a party complained that the trial court admonished her, during cross-examination, to wait until opposing counsel finished stating his question before she attempted to respond to it, the court summarily concluded, "This assignment of error is patently without merit and is overruled."); *King v. Cole*, 3d Dist. No. 15-79-7 (July 8, 1980) (where a party argued that the trial court erred in directing plaintiff to wait and let his counsel ask specific questions, the court summarily held: "The trial court must and does have discretion in the conduct of the trial and no abuse of discretion is evident here."). Witnesses being cross-examined often ask if they can say

something, and it is a common part of a trial court's discretionary function to declare (without waiting for a prompt by the prosecution) that the witness should wait for a question and answer only the question presented. *See, e.g., State v. McKinney*, 10th Dist. Nos. 89AP-466, 89AP-467, 89AP-468, 89AP-469 (March 6, 1990).

**{¶65}** The court was within its discretion to ensure: (1) that the witness did not start arguing with the state, and (2) that the witness waited for a question before offering information. Notably, this occurred on cross-examination. The defense engaged in redirect and could have asked the witness about this subject at that point. Contrary to any suggestion by appellant, the court made no ruling on whether she could testify as to this matter, only that she cannot make assertions on cross-examination when no question was yet articulated. And, in fact, it was clear from her testimony for the defense that she did not want the intimidation charge to proceed. There was no error here, let alone plain error. This assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER FIVE

**{¶66}** Appellant's fifth and final assignment of error provides:

**{¶67}** "THE JUDGE ABUSED HIS DISCRETION WHEN HE INSTRUCTED THE JURY CONCERNING THE RELEVANCY OF WHAT THE VICTIM BELIEVED CONCERNING THE ALLEGED THREATS."

**{¶68}** The trial court provided the jury with the elements of the charged offense. (Tr. 179). The court defined each individual element. (Tr. 179-180). The court then stated, "whether Desiree Browning actually believed any threats of harm that may have been made to her is not relevant to your determination." (Tr. 181).

**{¶69}** Appellant contends that the victim's perception would be relevant to determine whether or not a threat was made. Appellant notes that the victim testified that she was not afraid and that she was not threatened. He asserts that the court's instruction removed that testimony from the jury's consideration. Appellant concludes that the outcome would have been different if this instruction had not been provided.

**{¶70}** When faced with a claim of an erroneous jury instruction, the item contested must be evaluated in the context of the entire jury charge. *State v. Madrigal*, 87 Ohio St.3d 378, 396, 721 N.E.2d 52 (2000). "On appeal, party may not assign as error the giving or the failure to give any instructions unless the party

objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). Here, there was no objection to this jury instruction at trial.

**{¶71}** Thus, this issue is waived absent plain error. A plain error review is purely within this court's discretion *See Noling*, 98 Ohio St.3d 44 at ¶ 62; Crim.R. 52(B). Notice of plain error is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *Noling*, 98 Ohio St.3d 44 at ¶ 62. Otherwise, there would be a rampant trial strategy among defense attorneys wherein counsel would allow erroneous instructions to proceed without mentioning a claim of error at the time that it could be corrected, hope for a favorable verdict, and then use the erroneous instruction to obtain a new trial on appeal.

**{¶72}** As aforementioned, there is no requirement that the victim feel intimidated or even know of the attempt to intimidation, influence, or hinder. *Howard*, 9th Dist. No. 11CA010130 at ¶ 13; *Williams*, 8th Dist. No. 94261 at ¶ 14; *Thomas*, 6th Dist. No. L-02-1375 at ¶ 22; *Peace*, 6th Dist. No. L-82-361. *See also In re Washington*, 81 Ohio St.3d at 340 (intent need not be proven by direct testimony as it lies only in the defendant's mind). The statute defining intimidation does not, by its plain language, require the victim to have believed the threats of harm. R.C. 2921.04(B). *Compare* R.C. 2903.21 (where the aggravating menacing offense has as an element: "cause another to believe that the offender will cause serious physical harm to the person"). It is the intent of the defendant that is crucial, not the belief of the recipient.

**{¶73}** Still, this does not mean that the victim's belief is wholly irrelevant. We note that the state does not support the trial court's instruction in its brief but focuses on whether it was plain error. Although the wording of the court's instruction may have been more clearly crafted, the jury did hear the victim's various statements regarding her belief and her perceptions and the court did not actually prohibit the jury from considering her testimony on this issue. Viewed in light of the entire charge, we cannot conclude that this instruction created a manifest miscarriage of justice. In accordance, this assignment of error is overruled.

**{¶74}** For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Waite, J., concurs.
DeGenaro, P.J., concurs.